# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Elizabeth Hoppe, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09 C 03430 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| Lewis University, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Elizabeth Hoppe, a professor at Defendant Lewis University, has filed this suit against Lewis seeking damages for violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the American with Disabilities Act, 42 U.S.C. § 12101. R. 7.[1] Lewis has moved for summary judgment on all of Hoppe's claims. R. 32. Additionally, Hoppe has moved to strike Lewis's reply [R. 57 and R. 57(corrected)], and Lewis has moved to disqualify Hoppe's proposed expert witness. R. 49. As explained below, Hoppe's motion to strike the reply will be converted into a sur-reply, but the motion to strike will be denied—the duplicate motion [R. 58] raising the same issue is also denied. Furthermore, Lewis's motion to disqualify the expert [R. 49] is also denied for purposes of this motion, because even if the purported evidence is taken into account, summary judgment must be granted. Finally, because there are no

---

[1]Citation to the record is "R." followed by the docket entry. The Court has jurisdiction pursuant to 32 U.S.C. § 1331.

genuine issues of material fact, and because Lewis is entitled to judgment as a matter of law, the motion for summary judgment [R. 32] is granted.

## I.

The following facts are drawn from the parties' Local Rule 56.1 materials, R. 42; R. 53,[2] and is presented in the light most favorable to Hoppe, the non-moving party, with all reasonable inferences drawn in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635, 639 (7th Cir. 2010). Hoppe, who is Caucasian, was hired by Lewis in 1999 to serve as an Assistant Professor in the Philosophy Department of the University. R. 42 ¶ 3. In 2005, Hoppe was promoted to the position of Associate Professor with tenure in the Philosophy Department. *Id.* Hoppe holds that position at this time. *Id.*

Hernando Estévez, a Latino from Colombia, was hired in 2005 to a temporary, one-year, non-tenure-track position in the Philosophy Department. *Id.* ¶ 8. Contrary to Lewis's policy, Estévez was permitted to teach courses at other institutions because he had already made a commitment to those schools before joining Lewis. *Id.* ¶ 9. Hoppe disputes that this policy exists, citing to an exhibit from her deposition, R. 39, Exh. 1, 121. But, like many of the factual disputes Hoppe tries to present, the supporting material she cites in support does not actually refute Lewis's asserted fact. Moreover, the Court is left on its own to infer how the cited sources support Hoppe, because Hoppe does not explain the basis of her dispute, but simply writes, "disputed,"

---

[2]R. 42 is Hoppe's response to Lewis's original 56.1 statement of facts, R. 34. Similarly, R.53 is Lewis's response to Hoppe's facts asserted in R. 42.

and lists the citations.[3] For the purported dispute over the policy governing teaching at other schools, the cited exhibit provides that "teaching at other colleges or universities is not permitted, unless approved in writing." *Id.* Additionally, Hoppe cites to Dean Durant's deposition, R. 35, Exh. 5, 14, to dispute that such policy ever existed. But that portion of Durant's deposition notes that it was always the policy that a teacher could not teach outside of Lewis but could do so with special permission, and that everyone understood that policy. *Id.* Hoppe does not dispute that the exception was granted to Estévez for just the one year. R. 42 ¶ 11. After his year was completed, Estévez was offered a full-time, tenure-track position, but rejected the offer. *Id.* ¶ 12. Hoppe alleges that Estévez did not accept the position because he felt discriminated against. *Id.* ¶ 13. In Hoppe's deposition, she testified that Estévez never said he felt discriminated, but instead, in Hoppe's opinion, told her "indirectly" that he was treated unfairly. R. 39, Exh. 1, 55-56. Specifically, Hoppe says that Estévez told her that he met opposition from Dean Durante when Estévez wanted to negotiate the contract he was offered. *Id.* Two months after Estévez rejected the offer, Hoppe wrote a final evaluation of Estévez, expressing regret over Lewis's decision not to hire Estévez, but she did not include any reference to discrimination or unfair treatment. R. 42 ¶ 15.

---

[3]The materials in support can be difficult to find, but appear to be mostly on the docket, if not easy to track down. For example, in response to this allegation, Hoppe cites "Exhibit 3 of Hoppe dep." After consulting a chart outlining where the Court can find the supporting documentation, R. 39, the Court is directed to "Exhibit A - Excerpts from the Deposition of Dr. Elizabeth Hoppe." This sends the reader to R. 39, labeled "Exhibits Part A." Exhibits Part A has 10 attachments, which are actually Hoppe's exhibits A-J, but not identified as such—Exhibit 1 is A, Exhibit 2 is B, and so on. Exhibit 1 includes the deposition of Hoppe and the cited attachment.

The position was then offered to and accepted by Tracey Nicholls. *Id.* ¶ 16. Lewis contends that the position was offered as a non-tenure-track, one-year position, like the position Estévez was originally offered. *Id.* Hoppe argues that although the contract said the position was non-tenure, she was told by Durante that the position was a tenure position, but that the contract was intentionally worded as a non-tenure position for immigration law purposes. R. 39 Exh. 1, 71-72.

Hoppe filed a Charge of Discrimination with the EEOC, alleging that Estévez was discriminated against because the contract he was offered had several restrictions that were not imposed on Nicholls. R. 42 ¶ 25. First, Hoppe argues that Estévez was not permitted to teach at other institutions in his contract, but admits that she has no knowledge that Nicholls was permitted to teach at other institutions, or that she has. *Id.* ¶¶ 26-27. Second, Hoppe alleged that Estévez was not going to be permitted to apply his year of teaching toward the time to make tenure. *Id.* ¶ 32. Yet Hoppe knows of no faculty member who has been permitted to apply 1 year of a non-tenure position to the tenure track, although she does know of one professor who reached tenure faster than the six years typically required. *Id.* ¶ 34. Third, Hoppe alleged that Lewis acted in a discriminatory manner by not allowing Estévez to teach graduate courses, but admits that not every tenure-track faculty member gets to teach graduate courses. *Id.* ¶ 35.

In the fall of 2006, Hoppe was granted a sabbatical. R. 42 ¶ 17. On August 10, 2006, Hoppe was notified that due to reorganization within the University, it would be

4

helpful if she could pack up her office, which was on loan from the education department, which needed the space back. *Id.* ¶ 19. Hoppe was never prohibited from entering the University's grounds, and she was provided an office to share with another professor. *Id.* ¶ 21. Other professors share offices at Lewis, especially when the office is large, like the one Hoppe shared. *Id.*[4] When Hoppe returned from sabbatical she was given an office in the academic building, but she refused to use the office, removed her name from the door, and modified her syllabus to indicate that she would not meet students in the office. *Id.* ¶ 22.[5] Hoppe has not used an office since Spring 2007, although she has been offered five offices. *Id.* ¶ 23.

---

[4]Hoppe claims to dispute this fact, but her cited testimony does not support her position, nor do all of the citations exist. In the cited deposition, Hoppe admits that other professors shared offices, especially large offices. R. 39 Exh. 1, 397-398. 30-31. Additionally, Hoppe cites to pages 29-31 of Peter Kirstein's deposition, R. 39 Exh. 4, but did not attach page 29 of Kirstein's deposition. In the pages attached, Kirstein merely states that sharing offices is less than ideal, but does not testify that the practice does not occur in higher education. Although Hoppe attached most of the cited materials, *supra* n. 3, citing to materials that were not included occurs with some regularity.

[5]Hoppe disputes this fact by citing to "Def. 209, 280." The Court cannot find or determine where these materials are located. In support of its asserted fact, Lewis cited to its Exhibits B and C. "Def. 209, 280" cannot refer to pages in Lewis's exhibits, because neither Exhibit B nor C has a page 280, Exhibit C does not have a page 209, and the testimony contained in B's page 209 discusses a different subject. The Court assumes that Hoppe is citing to a Bates-stamped document, but Hoppe does not indicate where those documents are located on the docket. As noted above, this is a recurring problem with Hoppe's citations. From this point on in the opinion, if Hoppe failed to cite materials that actually disputed the asserted fact, the Court deemed the fact undisputed for failure to comply with Local Rule 56.1. Hoppe filed her supporting materials in seven separate docket entries, often with the docket entry comprising a dozen or more attached exhibits. "It is not [the Court's] function to scour the record in search of evidence to defeat a motion for summary judgment; [the Court relies] on the nonmoving party to identify with reasonable particularity the evidence upon which he relies." *Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996).

Hoppe filed a second Charge on July 27, 2007, alleging that Lewis retaliated against her for filing the first Charge. *Id.* ¶ 36. The alleged retaliation was that Dean Durante stopped speaking to her. *Id.* ¶ 37. As a result of the lack of communication, Hoppe alleges that she was no longer able to serve on committees, or was denied access to committees when she expressed interest. *Id.* ¶ 38-44. Additionally, Hoppe claims all of the following happened in retaliation: she was removed from teaching in the aviation department, *id.* ¶¶ 45-55; Dean Ayers initiated sanctions against her for missing multiple meetings, *id.* ¶ 56; she was not permitted to participate in the final version of the Philosophy Department Program Review, because she missed the deadline for writing a response, *id.* ¶ 57; she applied for, but did not receive, a particular grant (called a Doherty grant), *id.* ¶ 58; after Dean Durante received two harassing letters and reported them to the police, she included Hoppe's name on a list of a dozen people who "might have a problem or issue or be angry with her," *id.* ¶ 59.

In August 2007, Hoppe saw a doctor who diagnosed her with adjustment disorder with anxiety and depressed moods. *Id.* ¶ 62. The effects of the anxiety are severe. At times, Hoppe is limited to checking email once a week. R. 53 ¶ 2. On occasions, she has required the assistance of friends, her therapist, and her attorney to read her email and summarize it for her. *Id.* She has avoided the internet. *Id.* She has gone a full month without checking her voice-mail, even when she is told by friends that they left her a message. *Id.* Additionally, she has gone a month without opening

mail. *Id.* Further, Hoppe has been unable to use offices offered by Lewis due to their proximity to individuals who exacerbate her adjustment disorder. *Id.* ¶ 3.

In seeking an accommodation for Hoppe's disorder, her doctor sent a letter to Lewis on August 27, 2008 asking that Hoppe's office be moved. R. 42 ¶ 69. The letter did not say where Hoppe should be moved to or what office would be suitable. *Id.* Accordingly, Lewis responded with a letter asking questions to determine how to accommodate Hoppe. *Id.* ¶ 71. Hoppe took the letter to her doctor who handwrote notes on the letter; Hoppe retained the letter with the handwritten notes. *Id.* ¶ 72. Lewis received another letter on September 30, 2008, which still failed to explain where an appropriate office would be located. *Id.* ¶ 73. In response to the doctor's letter, Lewis offered Hoppe three different offices in the academic building, where she currently had an office which she refused to use; all three were rejected. *Id.* ¶ 74. On January 19, 2010, a third letter was received from Hoppe's doctor. *Id.* ¶ 75. The letter suggested that Hoppe be moved to a different "location," but did not identify who in the current building was causing a problem for Hoppe, despite Lewis's explicit request for that information. *Id.* Three days after receiving the letter, Lewis offered Hoppe an office in the "LRC" building to comply with Hoppe's doctor's orders. R. 34, Exh. B9. On February 25, 2010, Hoppe accepted the office, but ultimately never moved into it. R. 42 ¶ 77.

Additionally, Lewis was never provided an ergonomic chair, as requested by Hoppe's doctor, because Hoppe never accepted an office. *Id.* ¶ 80. Lewis has attempted

to meet with Hoppe to provide an ergonomic chair, but Hoppe has not participated in any discussions about arranging for an ergonomic chair because she has had anxiety issues. R. 39, Exh. A, 377-378. On April 16, 2010, Hoppe's doctor sent another letter specifically listing what buildings were not suitable for Hoppe. R. 53 ¶ 6. Hoppe's current office situation is not included in the summary judgment filings, presumably because the letter was written after Lewis filed its motion, and Hoppe's response came shortly after.

Hoppe filed this action against Lewis alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964, Section 1981, and the American with Disabilities Act. R. 7, Exh. 1. Count One asserts an associational discrimination claim, alleging that Hoppe was denied the benefits of a diverse colleague because Lewis discriminated against Estévez. *Id.* ¶¶ 61-64. Count Two is a retaliation claim based on Hoppe's alleged protected activity against Lewis's race discrimination. *Id.* ¶¶ 65-70. Count Three alleges the same associational discrimination claim as Count One, but Count Three invokes 42 U.S.C. § 1981. *Id.* ¶¶ 71-75. Count Four alleges that Lewis retaliated against Hoppe, in violation of § 1981, for reporting Lewis's discrimination of Estévez. *Id.* ¶¶ 76-80. Count Five is a claim for failure to provide Hoppe with a reasonable accommodation under the ADA. *Id.* ¶¶ 81-88. Count Six is a claim that Hoppe was retaliated against for complaining to the EEOC that her disability was not being accommodated. *Id.* ¶¶ 89-92.

## II.

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

9

# III.

## A.     Related Motions

Before addressing Lewis's motion for summary judgment, there are two motions that aim to shape the evidence and arguments that are before the Court for the summary judgment motion. Lewis filed a motion to disqualify Hoppe's expert witness, Dr. Peter Kirstein. R. 49. Plaintiff has filed a "motion to strike portions of Defendant's reply or for alternative relief." R. 58.

### 1.     Motion to Disqualify Dr. Kirstein

Dr. Peter Kirstein is proffered by Hoppe as an expert to testify regarding a tenured professor's right to have an office generally, and also specifically while on sabbatical. R. 49 at 2. Lewis objects to Kirstein's expert testimony, and argues that it is improper under *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993). R. 49 at 7. Naturally, Hoppe defends her expert, and argues that Kirstein's expert testimony meets *Daubert*'s standard. Neither party discusses whether the proposed evidence qualifies as expert testimony under Rule 702, which governs scientific, technical, or otherwise specialized knowledge. As it turns out, the Court need not address whether the proposed testimony would survive a *Daubert* hearing or Rule 702 screening. For purposes of deciding the summary judgment motion, the Court will consider Dr. Kirstein's testimony. As discussed below, even with Kirstein's testimony, summary judgment must be entered for Lewis as to all counts.

### 2.     Motion to Strike or for Alternative Relief

10

Hoppe has moved to strike portions of Lewis's reply brief, contending that it raises an argument—that Hoppe could not complete essential functions of her job—for the first time, and has waived the argument by not asserting it in its opening memorandum. R. 54. Alternatively, the "motion to strike" responds to Lewis's argument that Hoppe is unable to complete the essential functions of her position. *Id.* Hoppe's motion to strike will be denied, and the motion will be treated as a sur-reply. The Court will consider Lewis's arguments that Hoppe was unable to complete essential functions of her job and will also consider Hoppe's response to that argument.

There is no mechanism in the Federal Rules of Civil Procedure to strike briefs in the manner Hoppe asks. *Custom Vehicles v. Forest River*, 464 F.3d 725, 726-727 (7th Cir. 2006) (motions to strike "[do] nothing but squander time"). Arguments that the Court should not consider a brief in whole or in part should be made in a responsive brief explaining why the Court should not rely on the particular testimony or consider a particular argument. Thus, the Court will treat Hoppe's motions to strike as a sur-reply, and concludes that Lewis has not waived any arguments regarding Hoppe's ability to complete essential responsibilities of her position.

Hoppe argues that Lewis has waived its argument because it was first raised in the reply memorandum. R. 58 at 1-2. Hoppe contends that Lewis had full knowledge of the extent of her disability when Lewis filed its motion for summary judgment, but opted not to make an argument on essential functions. Lewis's knowledge is evidenced, Hoppe argues, in Lewis's statement of facts. R. 42 ¶ 63. Additionally, Hoppe argues that the extent of her disability was clear from passages of her deposition. R. 58, Exh.

11

2. Because Lewis knew the extent of Hoppe's disability, she argues, Lewis should have made an essential-functions argument in its opening brief. But Lewis's statement of facts do not reflect that it knew the extent to which Hoppe's disability allegedly impaired her work ability, and Hoppe's deposition also did not establish the magnitude of her disability.

In Paragraph 63 of its statement of facts, Lewis asserts that Hoppe's adjustment disorder "substantially limits her in the major life activity of communicating," but that Hoppe is able to perform the essential functions of her position. R. 34 ¶ 63. The allegation does not mention Hoppe's inability to answer email any more than once a week, and ultimately concludes that Hoppe is able to perform the essential functions of her position. *Id.* These allegations are in line with Hoppe's deposition and responses to interrogatories. Hoppe stated in an interrogatory that she had "difficulty" communicating, R. 34, Exh. F ¶ 22, and in her deposition, that her difficulty communicating was "sporadic," and some days she could open her mail and then there would be "a day" she was "feeling the anxiety" that would prohibit her from opening mail. R. 61, Exh. A. It is worth emphasizing that Hoppe said there might be "*a day*" when she would have trouble opening mail. She also testified that she had no trouble with student email, which was accessed through a separate Hotmail account made solely for student communication. *Id.* Like Lewis's statement of facts, none of this testimony mentions the depth of Hoppe's difficulties as explained in her statement of facts.

12

Hoppe's statement of facts sought to establish, for the first time, the full extent to which her disability limits her communications. Hoppe alleged that her "severe anxiety" has limited her to "check[ing] email once a week," and that she "has gone a month without checking her voicemail" or "opening mail." R. 42 at 16 ¶ 2. This is very different from Hoppe's earlier allegation that she could check mail without trouble, but might run in to an occasional bad day. Given the difference between Hoppe's testimony during discovery and her allegation in her statement of facts, it is understandable that Lewis did not make an essential-functions argument in its opening brief. The rule that arguments first made in a reply are waived stems from a desire to prevent surprise litigation, and to give the parties a full opportunity to address the other's arguments. *Hernandez v. Cook County Sheriff's Office*, 634 F. 3d 906, 913-914 (7th Cir. 2011). Those same interests are what permit Lewis to make its essential-functions argument at the reply stage. Moreover, Hoppe is not prejudiced by allowing this argument because Hoppe's counter-argument in its motion to strike will be considered below. Hoppe's motion to strike, R. 57 and R. 58—the motion was filed twice—are denied, and will be treated as a sur-reply.

**B.    Motion for Summary Judgment**

**1.    Counts One and Three (Associational Discrimination)**

Generally, the same principles apply to discrimination claims under Title VII (Count One) as under 42 U.S.C. § 1981 (Count Three). *Swearnigen–El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 860 n. 6 (7th Cir.2010). Accordingly, the Court will group together the discussion of Hoppe's discrimination claims under both statutes. *See*

*Herron v. DaimlerChrysler*, 388 F.3d 293, 298 (7th Cir. 2004). Although Hoppe does not claim to be the subject of direct discrimination in violation of Title VII or § 1981, she can still pursue a claim for discrimination of a colleague based on associational discrimination. *Stewart v. Hannon*, 675 F.2d 846, 849 (7th Cir. 1982). *Stewart* recognized that a white plaintiff could bring a Title VII action for discrimination against black coworkers, because the plaintiff was denied the "important benefits of interracial associations." *Id.* at 850. But that cause of action has only been recognized under Title VII. Neither party cites, nor can the Court find any controlling precedent establishing a theory of liability under § 1981 for associational discrimination. To be sure, § 1981's text was broadened in response to a Supreme Court opinion that narrowly interpreted the statute, but the expanded language does not include associational discrimination. § 1981(b). Thus, at the outset, judgment is entered in Lewis's favor for Count Three. But even if the action was recognized under § 1981, it would fail for the same reasons, outlined below, that the associational discrimination claim fails under Title VII.

The associational discrimination claim makes for a unique analysis, because the test for discrimination is not applied to a plaintiff, but instead an associate (or putative associate) of the plaintiff. Thus, here, the focus will be on the alleged discrimination against Estévez. To prove discrimination, Hoppe may use either the direct method or indirect method of proof pursuant to the *McDonnell-Douglas* framework. *See Naik v. Boehringer Ingelheim Pharm.*, 627 F.3d 596, 599 (7th Cir. 2010); *Egonmwan v. Cook*

14

*County Sheriff's Dep't*, 602 F.3d 845, 849-50 (7th Cir. 2010). Under the indirect method, Hoppe must first show that Estévez (1) is a member of a protected class; (2) his job performance met Lewis's expectations; (3) he suffered an adverse employment action; and (4) Lewis treated similarly situated individuals outside of his protected class more favorably. *Egonmwan*, 602 F.3d at 850; *Swearnigen–El*, 602 F.3d at 860.  If Hoppe establishes these *prima facie* elements, the burden then shifts to Lewis to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Naik*, 627 F.3d at 600. If Lewis meets this burden, Hoppe must demonstrate that the proffered reasons are pretext for discrimination. *Egonmwan*, 602 F.3d at 850.

The parties do not dispute that Estévez was a member of a protected class or that his performance met Lewis's expectations (after all, he was offered a position with the faculty). But the parties dispute whether Estévez experienced an adverse employment action, or if he did, whether individuals of a different national origin were treated more favorably. Even if the Court assumes that Estévez experienced an adverse employment action, Hoppe has not presented a genuine dispute that similarly situated individuals were treated differently. Hoppe relies on the offer made to Nicholls, after Estévez declined to accept the tenure-track position, to prove that a similarly situated person was treated differently than Estévez. Nicholls is the only allegedly similarly-situated individual Hoppe presents in her response to Lewis's motion for summary judgment. R. 48 at 8-9.

Hoppe's reliance on Nicholls fails for two reasons. First, Nicholls and Estévez were not similarly situated. "The similarly situated analysis requires a context-based

15

examination of all relevant factors." *Eaton v. Indiana Dept. of Corr.*, – F.3d –, 2011 WL 3966145, at *4 (7th Cir., Sep. 9, 2011). Employees with the same employment responsibilities and the same supervisor have been found not to be similarly situated when the plaintiff failed to show that they possessed similar employment history. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007). While the test is not meant to be so rigid as to be useless, "the comparators must be similar enough that any differences in [] treatment cannot be attributed to other variables." *Silverman v. Bd. of Educ. of Chicago*, 637 F.3d 729, 742 (7th Cir. 2011). Hoppe has not made a showing that Estévez and Nicholls were similarly situated. Estévez was pursuing his doctorate degree, while Nicholls already had hers. R. 42 ¶ 16. This distinction between Estévez and Nicholls's histories already render the two dissimilar. Any difference in the contract offered to Nicholls could be attributed to her different qualifications and degrees. Hoppe has not established any similarities between Nicholls's and Estévez's teaching histories or experiences, and so she has failed to show they are similarly situated.

Additionally, even if the two were similarly situated, the two offers were not comparable, nor can it be said that Estévez's offer was inferior to Nicholls's. Most glaringly, Nicholls was offered a *non*-tenure-track position. Estévez's position was tenure track. Hoppe also takes issue with the fact that Estévez was not permitted to teach outside of Lewis, but Hoppe does not allege that Nicholls's contract permitted her

to do so. Hoppe has failed to meet the elements to establish a *prima facie* case under Title VII for associational discrimination.

But there still remains the direct method of proof. Under the direct method, a plaintiff must present direct or circumstantial evidence that creates a "convincing mosaic of discrimination" on the basis of race. *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009) (citing *Troupe v. May Dep't Stores*, 20 F.3d 734, 737 (7th Cir. 1994)). Hoppe presents nothing of the sort. She concedes that Estévez never once complained to her about being the subject of discrimination. The best evidence Hoppe has is that she perceived Estévez "indirectly" tell her that he was being treated differently. R. 39 Exh. 1, 55-56. Hoppe argues that Estévez was treated differently because he was given an inferior contract—for a tenure-track position at Lewis—that he could not negotiate. Hoppe's argument is undermined by Estévez's letter turning down the offer he received. R. 46, Exh. 9, 2. In that letter, Estévez expresses his gratitude for the opportunity and his regret for not being in a position to accept. *Id.* If Estévez felt discriminated against, those feelings were suppressed in his letter rejecting Lewis's offer. Hoppe's allegations do not establish the "convincing mosaic of discrimination" that is needed to establish direct discrimination. Additionally, the direct method would still require a showing that Estévez suffered an adverse action, in this case, an inferior contract. *Nichols v. Southern Ill. Univ.-Edwardsville*, 510 F.3d 772, 784 (7th Cir. 2007). But, as explained above, there is no evidence that Estévez's contract was anything out of the ordinary. Because Hoppe has failed to prove discrimination against Estévez by

17

either the direct or indirect method, summary judgment is granted for Lewis on Count One (and Count Three).

### 2.    Count Five – ADA Discrimination

Hoppe also alleges that Lewis discriminated against her because of her disability. To survive summary judgment, a plaintiff must produce sufficient evidence for a reasonable trier of fact to find that (1) she was disabled within the meaning of the ADA, (2) that she is qualified to perform the essential functions of the job, either with or without a reasonable accommodation, and that (3) she suffered from an adverse employment action because of her disability. *Nese v. Julian Nordic Const. Co.*, 405 F.3d 638, 641 (7th Cir.2005) (citing *Byrne v. Board of Educ., School of West Allis–West Milwaukee*, 979 F.2d 560 (7th Cir.1992)).

The parties dispute all of the elements, but given Hoppe's Rule 56.1 statement, the second element is dispositive. Lewis challenges Hoppe's ability to perform the essential functions of her job. R. 54 at 4-5. Paragraph 2 of Hoppe's statement of facts reads in whole:

> Because of severe anxiety, Plaintiff has at times checked email once a week and had to have her friends, her therapist, and her attorney read her email and summarize it for her; has avoided the internet; had gone a month without checking her voicemail, including from friends who told her they left a message; has gone a month without opening mail; at least once a month does nothing and stays in bed all day; and does not go out with friends or date.

R. 53 ¶ 2. These limitations on Hoppe are severe. As Lewis notes in its reply brief, Hoppe's anxiety cuts across all forms of communication. Per her own statement of facts, a perfect storm of sorts could occur—and occur suddenly, as anxiety attacks are

not planned—where Hoppe would be unable to communicate in any manner for an entire week, and that is assuming that one tries to communicate with her via email. If a student or colleague attempted to call Hoppe, left a voicemail, and followed up with a letter, Hoppe could go a full month without reviewing or responding to the message. Hoppe's response to Lewis's arguments is that Lewis has acknowledged and admitted that Hoppe is able to perform the essential functions of her job. R. 58 at 3-4. But any admissions and statements Lewis made predate Hoppe's Rule 56.1 statement, where, for the first time, she explained the full depth of her disability. Lewis relied on Hoppe's earlier representations in forming its responses and addressing this issue. Lewis should not be penalized now because the depth of Hoppe's disability has only recently been asserted.

Based upon Hoppe's assertion in her Rule 56.1 statement, no reasonable jury could conclude that Hoppe can perform the essential functions of her job. Communication with students, committees, fellow professors, and administrators are a necessity for a teaching position, where the object of the profession is to communicate and pass on knowledge. Although Lewis is required to provide an accommodation so that a disabled individual can perform the essential functions of her job, *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001), no reasonable accommodation could overcome Hoppe's disability. Even if one assumes that Hoppe could find an office that does not cause her anxiety, the presence of certain others is one of the triggers that causes her anxiety. R. 53 ¶ 2. Thus, if a certain colleague causes anxiety, which Hoppe says includes multiple deans of the University, that person could be forced to wait up

to a week to communicate with Hoppe, because the colleague could be unable to email, write, call, or visit Hoppe. Because Hoppe's anxiety cuts across all forms of communication, and because she does not propose a reasonable way to deal with the limitations, summary judgment is entered in Lewis's favor for Count Five .

Even if the Court accepted that Hoppe could complete the essential functions of her job, her ADA claim would still fail, because Lewis made a reasonable effort to accommodate her anxiety. Under the ADA, a reasonable accommodation is defined in pertinent part as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). Hoppe's doctor made two requests for accommodations. First, that Hoppe's office be relocated to prevent anxiety. Second, that Hoppe be given an ergonomic chair. Hoppe claims that Lewis made "no attempts" to provide the requested accommodations. R. 48 at 4. But Hoppe has presented no facts that dispute that Lewis did make a reasonable effort to comply.

Hoppe's doctor first requested that she be given a new office in a letter dated August 27, 2008. R. 34, Exh. B3. That letter stated "I believe she needs to change her office location to reduce [her] stress." *Id.* Because this request did not provide sufficient guidance for Lewis, Lewis asked the doctor for specific recommendations as to where Hoppe should be relocated, and who she could not be placed near. R. 34, Exh. B4. The

20

response letter specifically asked "what factors would have to be avoided in a new office assignment." *Id.* In reply on September 24, 2008, the doctor requested that Hoppe "be given a new office at a different location than her present office space." R. 34, Exh. B6. It is at this point that Lewis offered Hoppe three different offices in the building where her current office assignment was located. Hoppe rejected all of these offices. A letter from Hoppe's doctor with the same vague language was sent December 11, 2009. R. 34, Exh. B7. The letter was received from Hoppe's counsel on January 19, 2010, and referred to moving Hoppe to a different "location." *Id.* Perhaps, assuming that the doctor wanted Hoppe moved to a different building, Lewis offered Hoppe an office in the Learning Resource Center. R. 34, Exh. B8. Over the early months of 2010, Lewis attempted to facilitate Hoppe's move to the new office, R. 34, Exh. B9. Additionally, believing that Hoppe had finally accepted an office space, Lewis arranged to provide her with an ergonomic chair for the office, R. 34, Exh. B10. As the letter explains, because obtaining an ergonomic chair requires fitting and meeting with a salesperson, the chair could not simply be delivered. But Hoppe's anxiety prevented either of her accommodations from moving forward. R. 34, Exh B9; Exh B10. Hoppe was unable to move into the new office and she was unable to meet with a furniture representative because of anxiety. *Id.* Hoppe contends that Lewis made no attempt to accommodate her office needs, R. 48 at 4, but the correspondence between Lewis, Hoppe's doctor, and Hoppe prove that Lewis was diligently trying to comply with Hoppe's doctor's orders. It was not until Hoppe's doctor sent a letter dated April 16, 2010, ten days *after* this motion for summary judgment was filed, that Lewis was specifically told what building

21

Hoppe could and could not work in. R. 45, Exh. 1 at 17. No reasonable jury could conclude that Hoppe failed to accommodate Hoppe's disability.

Lastly, Hoppe references an email accommodation in passing. R. 48 at 4. Hoppe does not develop this argument beyond a single sentence in her brief. She does not reference a request for an email accommodation in her statement of facts, and thus she has not asserted a failure to provide an email accommodation in defense of summary judgment.

Hoppe is unable to complete the essential functions of her job. Even assuming that Hoppe could complete the essential functions of her job, no reasonable jury could conclude that Lewis failed to provide her with reasonable accommodations. Hoppe's conclusory legal statements that Lewis failed to provide her with a reasonable accommodation cannot refute undisputed evidence that her doctor did not specifically request that she be moved from the building until April 2010, and up until that point, Lewis offered multiple new offices and an ergonomic chair for Hoppe. Because there is no genuine issue of material fact, and no reasonable jury could conclude that Hoppe could complete the essential functions of her job or was not reasonably accommodated, summary judgment is granted as to Count Five for Lewis.

### 3.    Counts Two, Four, and Six – Retaliation

Title VII forbids retaliation against anyone who "'has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 314 (7th

Cir.2011) (quoting 42 U.S.C. § 2000e–3(a)). Section 1981 also covers retaliation claims. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008). The ADA similarly prohibits retaliation against an individual asserting rights under that ADA. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001). A plaintiff may establish her retaliation claim under the direct or indirect method of proof. *See Weber v. Universities Research Ass'n, Inc.*, 621 F.3d 589, 592 (7th Cir.2010); *Kersting*, 250 F.3d at 1117.

"To avoid summary judgment under the direct method of proof for proving retaliation, a plaintiff must show: (1) that he engaged in a statutorily protected activity; (2) that he suffered a materially adverse action by her employer; and (3) there was a causal link between the two." *Silverman v. Board of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011); *see also Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 673 (7th Cir. 2011).

Under the indirect method of proof, two of four elements are the same as the direct-method elements: (1) she engaged in a statutorily protected activity and (2) she suffered an adverse action. *See Silverman*, 637 F.3d at 742. The indirect method of proof also requires Hoppe to show that she met Lewis's legitimate job expectations and that it treated her less favorably than similarly situated employees who did not engage in the statutorily protected activity. *See id.*; *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010). The indirect method of burden shifting is unavailable to Hoppe because she does refer to any similarly situated individuals in the portion of her brief devoted to

23

retaliation, R. 48 at 6-15, or her statement of facts. R. 53. Thus, Hoppe must pursue her retaliation claims using the direct method.

For the direct method, there are two types of permissible evidence. *Rogers v. Chicago*, 320 F.3d 748, 754 (7th Cir. 2003). First, there is direct evidence, which "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Id.* (citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Such admissions are rare. *Id.* And, indeed, they are rare here. Only once in Hoppe's brief or statement of facts does she make any allegations that comes close to this level of evidence. (It is discussed below with Hoppe's removal from the aviation department.) Hoppe then must prove her retaliation by relying on evidence that allows a jury to infer intentional discrimination, that is, circumstantial evidence. Using circumstantial evidence, Hoppe must prove that she suffered adverse activity and that there is a causal link between the adverse action and her protected conduct. As noted before, there must be a "convincing mosaic of circumstantial evidence." An oft-seen convincing mosaic occurs when an employee is fired or suffers some other adverse action shortly after engaging in protected activity, despite strong performance reviews in the past. *See, e.g., Sylvester v. SOS Children's Villages Illinois, Inc.*, 452 F.3d 900, 904 (7th Cir. 2006).

Neither party disputes that Hoppe engaged in protected activity. Hoppe alleges that her complaints to the EEOC caused the retaliation; this is protected activity. Moving to the next element, Hoppe alleges that she has suffered numerous adverse actions as a consequence of her protected conduct: the Dean stopped speaking to her,

24

*id.* ¶ 37; she was not allowed to serve on committees, *id.* ¶¶ 38-44; she was threatened with an improper reprimand, *id.* ¶ 56; she was removed from teaching aviation courses, *id.* ¶¶ 45-55; she was removed from her office space when she went on sabbatical, *id.* ¶ 19; she did not receive a Doherty grant, *id.* ¶ 58; she was not involved in creating an Environmental Ethics program, *id.* ¶¶ 43-44; she was not involved in the Philosophy Program Review, *id.* ¶ 57; and the Dean included her name in a list of potential suspects to the police, *id.* ¶ 59.

Anti-retaliation provisions do not protect from all retaliation, but only that retaliation that produces an injury or harm. *Burlington Northern and Satna Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). The adverse action must be quite strong, such that it would dissuade a reasonable worker from making or supporting a charge of discrimination. *Id.* at 68. For the reasons discussed below, none of these alleged adverse actions are viable, because none of them establish a "convincing mosaic of circumstantial evidence" that Hoppe suffered an adverse action because of her protected activity.

### a. Service on Committees and Lack of Communication with Dean

Hoppe alleges that she was excluded from working on committees because she stopped speaking with the Dean, who selected committee members. Hoppe states in her deposition that the dean "invites" people to be on search committees. R. 39, Exh. A, 190. There is no requirement that a teacher be included on any particular committee. *Id.* According to Lewis, there is no compensation for serving on a committee, R. 42 ¶ 42;

to dispute this, Hoppe cites a page of DeanDurante's deposition that is not attached to her 56.1 statement. R. 39, Exh. 5. Because Hoppe has provided no evidence that a professor is entitled to serve on a committee, or that a professor who is denied committees suffers any real harm that would inhibit engaging in protected conduct, no reasonable jury could find that Hoppe's absence from committees is retaliatory. Similarly, the Dean's lack of communication with Hoppe is a "snub," which is not protected by anti-retaliation provisions. *Burlington Northern*, 548 U.S. at 68.

### b. Threatened Sanctions

Dean Ayers wrote a memo to Hoppe warning her of sanctions for missing meetings. R. 46, Exh. 14; Exh. 15. In a response letter, Hoppe admitted to missing or rescheduling a number of meetings with the Dean. Ultimately, sanctions were never pursued. R. 42 ¶ 56. Hoppe does not allege that her experience was different before her protected activity, that is, that she had missed meetings before her protected activity, but not been threatened with sanctions. Given that Hoppe admitted to missing meetings with the Dean, her bare allegation that the sanctions were threatened in retaliation do not create a convincing mosaic of retaliation, and no jury could conclude that the threatened sanctions were retaliatory.

### c. Removal from Aviation Courses

As noted above, on this claim, Hoppe attempts to mount an argument for retaliation based on direct evidence. But Hoppe still fails to prove causation. Brogan was the chair of the Aviation Department, and he removed Hoppe from teaching in the aviation department. *Id.* ¶ 45. On a trip in October 2008, concerns were raised about

26

Hoppe's behavior as a chaperone on a visit to FedEx's aviation operation. *Id.* ¶ 50. Due to those concerns, and other reasons, Brogan chose to remove Hoppe from teaching in aviation. At a meeting that was convened to tell Hoppe that she would no longer be teaching in aviation, Hoppe became upset, and she was shaking and crying. R. 46, Exh. 11. Brogan was not able to explicitly tell Hoppe that she would no longer teach aviation, but he discussed Hoppe's skill set, and stated that he did not think she was qualified to teach in aviation. *Id.* Before Brogan could officially tell Hoppe she would no longer be teaching in aviation, Hoppe lost her composure and the meeting ended. The meeting occurred in October 2008. On a copy of the minutes from that meeting, Brogan added handwritten notes stating in part "people like that" should not be working in the aviation field, and that he did not want to be on "suicide watch." *Id.* At a later meeting in February 2009, Brogan officially told Hoppe that she would not be teaching in aviation. R. 46, Exh. 12.

Brogan's handwritten notes approach the level of direct evidence. But Hoppe's claim ultimately fails, because she provides no evidence that Brogan knew about Hoppe's protected activity or her disability. Lewis states that Brogan had no knowledge of the protected activity or Hoppe's need for accommodations due to her disability. R. 42 ¶¶ 45-46. Brogan's affidavit confirms that he had no knowledge of disability or protected activity when he decided to remove Hoppe from aviation. R. 34, Exh. K ¶ 19. Although Hoppe "disputes" this fact, her citations to supporting materials do not provide any argument, beyond speculation from Hoppe, that Brogan knew about any protected activity. R. 42 ¶¶ 45-46. Against Brogan's explicit statement that he did not

27

have knowledge, Hoppe's speculation, R. 39, Exh. 1,207, does not present *facts* that create a genuine issue of material fact that would allow a reasonable jury to conclude that Hoppe's removal from aviation was discriminatory or in retaliation.

### d. Removal from Office During Sabbatical

As discussed above, the Court will consider Dr. Kirstein's evidence for purposes of this motion, and assumes that as a matter of sound educational policy, a tenured professor such as Hoppe should have been assigned an office even while on sabbatical. Hoppe contends that she was removed from her office when she left for sabbatical, presumably in retaliation for her protected activity. The word "presumably" is appropriate because Hoppe's brief in opposition to the motion for summary judgment only states that she was removed from her office space. R. 48 at 7-8. She never actually argues that she was removed due to her protected activity. *Id.* Hoppe was moved to share an office with another professor during her sabbatical, and she was never prevented from coming to campus. R. 42 ¶ 21. Hoppe always had an office, even if it was not solely her own. Kirstein notes in his deposition that, while it is not ideal, doubling-up, or even tripling-up, in offices occurs with some regularity in higher education. R. 39, Exh. 5, 30-31. Additionally, Hoppe acknowledged that other professors who were not on sabbatical were sharing offices around the University. R. 39, Exh. 1 at 397-98. Hoppe has not provided evidence that she was subject to an adverse action, let alone that it was due to her engaging in protected activity. No reasonable jury could conclude that Hoppe was the subject of retaliation based on the

allegation that Lewis asked Hoppe to move to a shared office while on sabbatical, because the education department needed the space for accreditation.

### e.    The Doherty Grant

Hoppe alleges that she did not receive a Doherty grant due to retaliation. R. 42 ¶ 58. Hoppe concedes that she has no proof as to why she did not receive the grant, and that the committee may have just disliked her project. *Id.* Additionally, she does not allege that she received a Doherty grant before engaging in the protected activity. Her allegations do not create the necessary convincing mosaic for a reasonable jury to find retaliation.

### f.    Environmental Ethics Program

Hoppe complains that she was not included in the creation of an Environmental Ethics program. But Hoppe admits that she did not attend the meeting discussing its creation, and that other professors were also left out. R. 42 ¶ 43-44. Additionally, Hoppe does not allege that she was always included in new programs in the past, even when she missed meetings. No reasonable jury could conclude that Hoppe was left out of the program due to her protected activity.

### f.    Philosophy Program Review

Hoppe alleges that she was not allowed to participate in the final version of the Philosophy Department Program Review, but admits that she missed a deadline for writing a response. *Id.* ¶ 57. Moreover, she does not allege that she was permitted to participate in program reviews, despite missing deadlines, before she engaged in

29

protected activity. No reasonable jury could conclude that Hoppe was left out of the program due to her protected activity.

### g.    List to Police

Hoppe was included in a list of a dozen people who may have been angry or had a problem with Dean Durante. *Id.* ¶ 59. Hoppe admits that she has nothing other than her bare assumptions that she was included on the list out of retaliation. *Id.* ¶ 60. No reasonable jury could conclude that Hoppe was included on the list due to her protected activity.

## IV.

For the reasons stated above, Lewis University's motion for summary judgment [R. 32] is granted. Hoppe's motions to strike the reply [R. 57, 58] are denied. Lewis University's motion to disqualify the expert [R. 49] is also denied.

ENTERED:

*Edmond E. Chang*

Honorable Edmond E. Chang
United States District Judge

DATE: September 30, 2011